## Case No. 4,786.

### FILKINS et al. v. BLACKMAN.

[13 Blatchf. 440; [2] Cox, Manual Trade-Mark Cas. 282.]

Circuit Court, D. Connecticut. June 30, 1876.

Chase, Bestow & Holt, for plaintiffs.

Henry T. Blake and E. D. Strong, for defendant.

SHIPMAN, District Judge. In the bill in equity which was originally filed by the plaintiffs, they averred that they were residents of the city of Albany, and citizens of the state of New York, and were, as copartners, manufacturers and dealers in proprietary medicines; that they had long manufactured and sold a well known article of medicine, called "Dr. J. Blackman's Genuine Healing Balsam," which had gone into extensive use, and obtained a high reputation; that they had acquired an exclusive right to the use of that name as a trade-mark, and had also a right to the use of certain labels, which had been devised by one of the plaintiffs, upon the bottles containing the medicine; and that the defendant, a resident and citizen of Danbury, in Connecticut, was using, upon bottles of medicine of his own manufacture, said trade-mark, and labels which were close imitations of the plaintiffs' labels. The bill prayed for an injunction. Upon the hearing of a motion for preliminary injunction, the plaintiffs asked and obtained leave to amend their bill, by the averment, that, on October 14th, 1875, they deposited in the patent office, for registration, a label, of which the following is the title, viz., "Dr. J. Blackman's Genuine Healing Balsam," the right to the use of which they claimed as sole proprietors, and that said trade-mark was then duly registered in the patent office, and a certificate thereof was duly issued to the plaintiffs. The motion was tried upon the affidavits which were presented by the parties, no answer having been filed at the time of said hearing. The affidavits of the defendant deny the right of the plaintiffs to any exclusive use of such name or title, and assert the right of the defendant to manufacture said medicine, and to use said name, and assert that the plaintiffs do not manufacture the medicine according to the original formula, and have abandoned the use of the name "J. Blackman" in their trade-mark.

From the affidavits which are on file, it

appears that Jonas Blackman is the father-in-law of Morgan L. Filkins, one of the plaintiffs, and was, about the year 1840, the inventor of the article which was called, at the time of the discovery, "Dr. J. Blackman's Genuine Healing Balsam." It was at first sold under said name from house to house, until Dr. Filkins made a contract with Dr. Blackman, by which the former obtained a right to manufacture, or assist in the manufacture and sale of, said medicine. He subsequently entered into the business somewhat extensively, and placed the medicine upon the market. Two or three contracts were made between these parties, which expired by lapse of time or by mutual agreement. The final contract was as follows: "This agreement made and entered into this 28th day of November, A. D. 1865, between Jonas Blackman, of the town of Brookfield, and county of Fairfield, state of Connecticut, of the first part, and Morgan L. Filkins, of the city and county of Albany, and state of New York, of the second part, witnesseth, that, in consideration of the covenants and agreements hereinafter contained, to be performed by the party of the second part, the said party of the first part hereby sells and conveys unto the said party of the second part, his heirs or assigns, the exclusive right to use his name in the manufacture, putting up and sale of certain medicines, known as Dr. J. Blackman's Genuine Healing Balsam, Dr. J. Blackman's Valuable Red Salve, and Dr. J. Blackman's Valuable Strengthening Plasters, for the term of ten years from the first day of January, A. D. 1866; and the party of the first part hereby agrees not to manufacture, or cause to be manufactured, either himself or by his agents, or authorize any other person or persons to use his name in the manufacture of, said medicines, or any other medicine recommended to cure diseases said medicines are said to cure; and the party of the second part agrees, in consideration of the covenants and agreements hereinbefore stated, to pay unto the party of the first part, or his assigns, the sum of $365 annually, lawful money, at Brookfield, in the state of Connecticut, in manner following, to wit, $91 25 on the first day of each of the following months of April, July, October and January, of each year, up to and including the 1st day of January, A. D. 1876; and it is further agreed by the party of the first part, provided always that the party of the second part does well and truly perform the covenants and agreements to be by him kept and performed for the full term of ten years from the 1st day of January, A. D. 1866, thereafter the party of the first part gives and grants to the party of the second part all of the rights and privileges to use his name in the manufacture, putting up and sale of said medicines, without fee or reward to the party of the first part, his heirs or assigns for the full term of fifty years or more; and it is mutually agreed by and between the parties to these presents, that, in case either party shall fail to perform the covenants and agreements by such party to be kept and performed, the party so failing to perform shall pay unto the other party the sum of fifty thousand dollars, which sum of fifty thousand dollars the parties hereto have agreed to fix and liquidate as the damages in case of non-performance."

The medicine has become well known, mainly through the efforts of Dr. Filkins to introduce it to the public, has quite a large sale among druggists, and has been a source of profit. It is now made by the plaintiffs substantially according to the original formula which was furnished by Dr. Blackman, and the plaintiffs have never abandoned the use of the original name. The name of the inventor, "J. Blackman," is the distinctive part of the name or title of the medicine, and gives to the title its peculiar value. Newton M. Blackman, who is the son of Jonas Blackman, has engaged in the manufacture of the same medicine, which is put up in bottles encircled with labels closely resembling those which are used by the plaintiffs, and containing the same title or name—"Dr. J. Blackman's Genuine Healing Balsam." The defendant states, in his affidavit, that his father has sold him the formula, and the right to manufacture the medicine, and to use the father's name.

The question in the case is, whether or not the plaintiffs now have a clear and exclusive continuing right, under the contract which was entered into between Jonas Blackman and Morgan L. Filkins, to the use of the name which was originally given to the medicine by the inventor, and whether or not, therefore, the plaintiffs held the right, at the time of the registration of the trade-mark, to its exclusive use after January 1st, 1876.

The following general principles in regard to the assignment of the exclusive use of trade-marks are applicable to this case. The name "Dr. J. Blackman's Genuine Healing Balsam," which was originally given to the medicine by the inventor, "points out distinctly the origin or ownership of the article to which it is affixed," and the words "were appropriated as designating the true origin or ownership of the article or fabric to which they are attached." Canal Co. v. Clark, 13 Wall. [80 U. S.] 311. The name, as a whole, was his trade-mark, which he had the exclusive right to use, and the exclusive use of which would pass, by assignment, to any one who had lawfully obtained from the inventor the exclusive right, also, to manufacture and sell, and who did sell, that particular article compounded according to the original formula. "The property or right to a trade-mark may pass, by an assignment, or by operation of law, to any one who takes, at the same time, the right to manufacture or sell the particular merchandise to which said trade-mark has been attached. As a mere

abstract right, having no reference to any particular person or property,. it is conceded that it cannot exist, and, so, cannot pass by an assignment, or descend to a man's legal representatives." Dixon Crucible Co. v. Guggenheim, Am. Trade-Mark Cas. 331. If the assignee should make a different article, he would not derive, by purchase from Jonas Blackman, a right which a court of equity would enforce, to use the name which the inventor had given to his own article, because such a use of the name would deceive the public. The right to the use of a trade-mark cannot be so enjoyed by an assignee, that he shall have the right to affix the mark to goods differing in character or species from the article to which it was originally attached. It is not, however, necessary that an article to which a trade-mark, personal in its inception, was originally affixed, should always be manufactured at the same place where it was originally made. This particular trade-mark, being the name of the inventor, was personal to Dr. Blackman, in its inception, but has been permitted by him to be applied, and to be appropriated, to the same article when manufactured by Filkins Bros. Under the circumstances in which the medicine has been manufactured and sold, the use of the trade-mark does not imply that the medicine was manufactured by Jonas Blackman, but that it is the same article which he originally invented and manufactured. Bury v. Bedford, 10 Jur. (N. S.) pt. 1, p. 503; Leather Cloth Co. v. American Leather Cloth Co., 11 Jur. (N. S.) pt. 1, p. 513. It is also to be noticed, that an assignee of a trade-mark does not obtain a right to restrain copyists of his mark, merely by virtue of his assignment, but he must also show that it has actually been used and applied upon an article, so that the public have come to understand that "the article to which it is attached is the manufacture or production which is generally known in market under that denomination." Walton v. Crowley [Case No. 17,133].

In this case, an agreement was made on November 28th, 1865, between Jonas Blackman and Morgan L. Filkins, by which, in consideration of the agreement of the latter to pay specified royalties, Blackman sold and conveyed to Filkins, his heirs or assigns, the exclusive right to use the name of the inventor, in the manufacture and sale of certain medicines, for the term of ten years from January 1st, 1866. Blackman further agreed not to manufacture, or cause to be manufactured, and not to authorize any person to use his name in the manufacture of, said medicines; and, in case the said Filkins performed his covenants for the term of ten years, Blackman further granted "all of the rights and privileges to use his name in the manufacture, putting up and sale of sa'd medicines, without fee or reward, for the term of fifty years or more." There is no question that an exclusive right was granted

for the ten years ending January 1st, 1876; but it is claimed that thereafter a bare right or privilege was granted, in common with Jonas Blackman, to use his name and to manufacture said medicines. The determination of this question depends upon the construction which shall be given to the grant of "all of the rights and privileges to use my name." An exclusive right had been given for ten years, upon the payment of royalty, and, thereafter, "all of the rights and privileges" to use the name of the grantor were given, without royalty, for the term of fifty years. The terms "an exclusive privilege," and "all of the rights and privileges," as used in this contract, are synonymous, and, by the words "all of the rights and privileges" are meant all the rights, or the entire right, which the grantor had at the expiration of the term of ten years. Each word in the phrase "all of the rights" is to have the force which naturally belongs to such word, and, by construing the words to mean a conveyance of a bare right, the same effect is given to the language as if it had been "I convey the right, or a right, to use my name," which construction leaves the word "all" without any significance. If the grantor retained the right in common with Filkins to use the name of the inventor, he did not convey all of his rights, but retained as much as he granted. The grantor intended to convey, in a certain contingency, all the rights, for fifty years, which he had previously conveyed for the term of ten years. If the same language which is used in this entire contract had been used in an assignment of a patent or of a copyright, although it is true that "property in a trade-mark, or in the use of a trade-mark, has very little analogy to that which exists in copyrights or in patents for inventions" (Canal Co. v. Clark, 13 Wall. [80 U. S.] 311), the assignment would, it is believed, convey the exclusive right for the specified term. The grant is unlike a grant of an easement, for, there, the title to the land is retained, and in this case, the grantor parts with his entire right to the thing which is the subject-matter of the conveyance—the use of the trade-mark. I am of opinion that Filkins obtained, by the contract, an exclusive right to use this name, in the manufacture of the medicine, for the term of fifty years from January 1st, 1876.

The contract was made by Blackman with Morgan L. Filkins alone, and it is suggested, that, inasmuch as the bill is brought by Filkins Brothers, and as Welcome L. Filkins was not a party to the contract, or to the grant, the firm has no legal right to the use of the mark. When a partnership is formed in regard to the manufacture of the article to which the trade-mark is properly applied, "the trade-mark of one partner, in the absence of special regulations, becomes part of the partnership property." Bury v. Bedford, 10 Jur. (N. S.) pt. 1, 503.

. In regard to the propriety of granting a preliminary injunction, it is obvious that the plaintiffs have expended a good deal of money in advertising and in bringing this medicine into public use. They have made its manufacture profitable, and have invested their property in the business. The defendant has but recently, and not extensively, engaged in the manufacture, but is seeking to take advantage of the reputation which the efforts of others have given to the article. The contest between the parties is plainly the result of a family quarrel, in which, I think, the defendant is seeking to obtain a position to which the previous contract and business relations between his father and brother-in-law have given him no right.

Let a preliminary injunction issue, restraining the defendant from the use of the trade-mark "Dr. J. Blackman's Genuine Healing Balsam," and from the use of any label containing that name, or the name of Dr. J. Blackman.