BAINBRIDGE et al. v. HARRIS et al.

(Supreme Court, Appellate Division, Second Department.   December 5, 1907.)

PARTNERSHIP—DISSOLUTION—ACCOUNTING.

Evidence, in an action for an accounting between surviving partners and the representatives and legatees of the deceased partner, *held* sufficient to show that the interest of the deceased partner in the capital of the firm was only $30,000.

Hooker, J., dissenting.

Appeal from Special Term, Kings County.

Action by Henry C. Bainbridge and others against Maria Louise Harris, executrix, and others.  Judgment for plaintiffs, and defendants appeal.  Affirmed.

Charles T. Bainbridge died in the year 1880.  He was engaged with another in the business of manufacturing paper goods.  Upon his death, and in that same year, his widow Hannah Maria Bainbridge, and two of his sons, Henry C. and Richard W., entered into copartnership to carry on the same business.  The mother put in all of the capital, namely, the odds and ends of the father's business, and $6,200 in cash.  The interest of the partners in the capital and in the profits was fixed at 50 per cent. for the mother, 26 per cent. for one of the sons and 24 per cent. for the other.  The partnership agreement was not in writing.  The partnership continued to January 1, 1884, when they entered into a new partnership agreement in writing and dated that day.  Its term was fixed at ten years.  It stated the capital of each to be, that of the mother $15,860.08, of Henry C. $4,225.75 and of Richard W. $3,671.37, the amounts to the credit of each shown by the firm's books at that time.  It provided that she might draw $3,000 and each of the sons $2,000 a year as salaries; that at the end of every two years the salaries should be readjusted according to the condition of the business; that profits were to be divided one third to each at the end of each year, and losses borne in the same proportion; and that if the partnership should be wound up each partner should receive after payment of the debts the amount to his or her credit on the books, and one third of any sum remaining.

At the expiration of the said term of ten years, viz., on December 31, 1893, the partnership business continued without any change or new agreement.  On January 1, 1895, the books exhibited the total amount to the credit of each partner to be, that of the mother $28,987.54, of Henry C. $24,638.86 and of Richard W. $22,099.04, the increase being by credits from time to time of undrawn profits.

The said mother died testate on August 26, 1903, aged eighty-three years.  The partnership had continued up to her death.  She never took part in the management of the business but left it to her said two sons.  This action is by her said two sons against her executor, her two surviving daughters, her other surviving son, the two children of a deceased son, the seven children of a deceased daughter, and the executors of the said daughter, comprising all of her heirs at law and next of kin, they all being the children and grandchildren of herself and her said deceased husband, Charles T. Bainbridge.  By her will she left her estate to her children, and the children of her deceased children, share and share alike, per stirpes, except that the share of her daughter Lucy was to be at least $10,000, and that she left nothing to her two sons, her partners, saying in her will that she made no provision for them for the reason that she had already provided for them by giving to each of them a sufficient interest in the said partnership business.  The will was dated March 5, 1887, a codicil January 10, 1889, and a second codicil February 8, 1892.  It was admitted by the plaintiffs on the trial that if the said written partnership continued up to the mother's death her share of capital then was at least $60,000.

The complaint alleges that "at or about the end of the year 1895" the partners made an agreement "whereby the capital interest of Hannah Maria

Bainbridge therein" (in the copartnership) "was ascertained and agreed to be and was fixed at the sum of about $30,000, while the remainder of the capital and assets of the said business was ascertained and agreed to belong to the two said plaintiffs Henry C. Bainbridge and Richard W. Bainbridge," and "that thereafter the capital interest of the said Hannah Maria Bainbridge in the said business and assets so long as the same might be continued by them as copartners should be limited to and continue at the sum of $30,000, and her share of any profits made should be limited to the sum of $2,500 a year"; excepting that for the year 1896 she should receive one third of the profits in addition to the said sum of $2,500, after the said sons had each drawn for that year $7,000 and for the year 1897 the same after they had each drawn $9,000. The bill of particulars furnished by the plaintiffs states that the said contract was oral.

The prayer of the complaint is (in substance) that it be adjudged that the interest of the said mother in the said partnership assets is $30,000 (and $1,000 of undrawn profits), and that upon payment of the same to her executor by the plaintiffs the said copartnership assets, real and personal, be freed of all claim, trust or equity of her estate or of the defendants in or to the same.

The executrix of the said mother's will, her daughter Maria Louise, did not answer either as executrix or individually, nor did the other daughter Lucy Anna Bainbridge, nor the son Charles Edward Bainbridge. Only the children of the two deceased children (who were a son and a daughter), and the executor of the said deceased daughter, answered.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and GAYNOR, JJ.

Alfred A. Wheat (Gilbert H. Montague and William S. Woodhull, on the brief), for appellants Carleton Bainbridge and Sherman Bainbridge.

William Byrd (Robert L. Harrison, on the brief), for appellants John C. McKennie et al.

Albert G. McDonald, for respondents.

GAYNOR, J. The question of fact tried was what was the partnership agreement between the mother and her two sons when she died in 1903. The partnership books showed that since 1895 her share of the capital remained constant at $30,000, and that she received each year only $2,500 as her share of the profits, all increase of capital and all the rests of the profits being meanwhile credited to her sons. This course of dealing among the partners would be controlling evidence of the status and interest of each in the absence of any other evidence. But she did not participate in the management of the business, but left it to her sons. It is therefore argued that the contents of the books did not bind her, as would otherwise have been the case. Against this it was shown that annual and monthly statements were regularly made out from the books and given to her showing the capital interest and profits of each as stated above. These statements were found among her papers after her death. Two of her daughters also testified that they had seen her read these statements, and that she had told them that her capital interest in the partnership was $30,000 and her income therefrom $2,500 a year, and were to remain so, by agreement with her said sons. All of this suffices to show that the books correctly showed the relation and interests of the partners, and that therefore the written partnership agreement made on January 1, 1884, to continue for ten years, and which continued for two

years longer, as the partnership books showed, had been superseded by a new arrangement at the beginning of 1896. The books showed that she had about $30,000 to her credit at that time, that theretofore the profits had been divided equally among the partners, and that her capital, like that of her sons, had been increased almost every year by undrawn profits of the business placed to her credit. This course of business ceased at the end of 1895, and was succeeded by the course stated above. During the time the written partnership agreement was in operation, annual and monthly statements were given to her like those given to her after 1895. This series of statements for nineteen years, viz., from January 1, 1884, informed her fully of the changing interest of each partner in the capital and profits as shown by the books from time to time.

It was not unconscionable or unreasonable that at the age of seventy-three the mother should allow all future increase in the business to go to her two sons upon whose efforts it depended, and that she should be content in the retirement of her old age with over eight per cent. return on the capital which she had accumulated by the industry and fidelity of her sons and allowed to remain in the business. It was impossible because of her death for any direct oral evidence to be given by the sons of the making of the new arrangement, but the other evidence sufficed to enable the learned trial Judge to find that it was made.

There is a class of cases, i. e., of attempts to get the property of persons after their death by means of alleged oral agreements with them, which are looked upon with disfavor and suspicion by the courts, and against which there is a presumption at the outset, instead of their being approached, like other cases, with a neutral mind; but this case after all is hardly of it. And if it be deemed to be, such presumption was removed, and the case fairly proved. That the new arrangement was not put in writing is a fact to consider, but it is not controlling. The partnership agreement for the first three years, viz., from 1880 to 1884, was not in writing.

The judgment should be affirmed.

Judgment affirmed, with costs.

JENKS and RICH, JJ., concur. HOOKER, J., dissents. HIRSCHBERG, P. J., not voting.