ground, namely, the valuation of the corporation known as William F. Crerand & Co., to be disposed of.

The decedent died the owner of the entire stock of this, a corporation engaged in the business of publishing two trade journals. The appraiser fixed the value of this good will at the sum of $100,000, basing this on the profits for the five years preceding decedent's death at an average of $20,000 per year. The appraiser's finding in this respect was incorrect. On the testimony the profits should have been $18,000 for each of these years, or $90,000. The executrix entered into a contract to sell the corporation for $125,000. This resulted in the payment of $15,000 by the person with whom the contract was made, and a default as to the payment of the balance, which was to have been from the earnings of the corporation for a period of years. The assets of the corporation, as well as its good will, only realized the sum so paid and the further sum of $5,000, which was received from the sale of one of the two papers published by the corporation.

· An examination of the report and proofs thereto annexed convinces me that a fair allowance to the decedent by way of salary for his management of the corporation for the five years preceding his death should be made. Matter of Rees, 208 N. Y. 590, 102 N. E. 1112; Matter of Bach, 147 N. Y. Supp. 229. From the testimony herein I think this allowance in this case ought to be at the rate of at least one-half of the profits for the period in question. These were, as above stated, $90,000, to which should be added $25,000, the amount drawn by Mr. Crerand for said years at the rate of $5,000 per year, making in all $115,000. One half of this going to decedent as salary leaves the other half, $57,500, an average profit of $11,500 for each of the five years, as the value of the good will of the corporation. This amount, added to the value of the tangible assets, to wit, $21,297.01, gives $78,797.01 as the value of all the assets of the corporation.

The order fixing tax will be reversed, and the appraiser's report remitted to him for correction as indicated.

---

(90 Misc. Rep. 521)

### In re ROOS' ESTATE.

(Surrogate's Court, Bronx County. May, 1915.)

1. TAXATION ⊂⇒895—TRANSFER—VALUATION—CORPORATIONS — SURPLUS RESERVE.

In arriving at the cash value of shares of capital stock of a corporation owned by decedent for purposes of fixing the transfer tax, the amount of a surplus reserve, set aside to cover losses from bad debts and other contingencies, was properly included, where there was no proof of bad debts.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ⊂⇒895.]

2. TAXATION ⊂⇒895—TRANSFER TAX—VALUATION—GOOD WILL—DEDUCTION OF SALARY FROM PROFITS.

In fixing the cash value of decedent's shares of stock in a corporation subject to the transfer tax, the good will of the corporation's business

is subject to a tax; and, where the president and decedent, the vice president and treasurer of the corporation, together owning the majority of its stock, did not draw salaries commensurate with their services and allowed the difference between what they received and what they should have received to accumulate as profits, a fair deduction from the apparent profits as a salary for services was proper in fixing the value of the good will; and the fair valuation of the stock was the book value thereof, without any assessment for the good will, shown to be of no value, which was also about the market price thereof, plus the allowance made as a part of the corporation's surplus reserve and a dividend subsequent to decedent's death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. ☜895.]

In the matter of the appraisal, under the Transfer Tax Law (Consol. Laws, c. 60), of the Estate of Charles L. Roos, deceased. From an order fixing the cash value of decedent's property, subject to transfer tax, the executrix appeals. Report remitted to appraiser for correction.

Man & Man, of New York City, for appellant.
John Boyle, Jr., of New York City, for respondent State Comptroller.

SCHULZ, S. The executrix appeals from an order fixing the cash value of the property of the decedent, the transfer of which is subject to the tax imposed by the act relating to taxable transfers. Tax Law, art. 10, § 232, being Laws of 1909, c. 62, and constituting Consol. Laws, c. 60.

The decedent at the time of his death was a stockholder and officeholder of the corporation known as William S. Hedges & Co. The capital stock of this corporation consisted of 2,000 shares, having a par value of $100 each, of which the holding of the decedent amounted to 635 shares. About 1,100 shares were owned by the president of the company, and the remaining shares were owned in various amounts by three other stockholders of the corporation. All of the stockholders of the corporation were also officers of the corporation and were actively engaged in its business.

[1] In arriving at the value of the said shares of stock for purposes of taxation, the appraiser declined to permit a deduction of $20,000, called a "surplus reserve" and being a deduction of 10 per cent. from the face value of the assets, and he also placed a value on the good will of the business of the corporation and by so doing assessed each share of stock owned by the decedent at $159.61.

The appellant raises two questions on her appeal. She claims that it was an error to include the said $20,000 in arriving at a valuation of the shares of stock of the corporation, and that it was also error on the part of the appraiser to place any value upon the so-called good will of the business. The amount fixed as a possible depreciation in the value of the stock and to cover losses due to bad debts and other contingent causes was, no doubt, a wise precaution adopted to ascertain a conservative value of the property of the corporation; but there is no

proof that there was any depreciation in the value of the stock, or that there were any bad debts or contingent losses other than those for which allowance has been made, and the arbitrary deduction of this amount from the assets of the corporation is therefore not justified in my opinion.

[2] The corporation was engaged in buying and selling pearls and precious stones and conducted almost exclusively a wholesale trade, the testimony being that only 15 per cent. of the sales were made at the place of business of the corporation. Its president received a salary of $5,000 a year. The decedent, who was vice president and treasurer, received a salary in 1912 of $3,200, and in 1913 a salary of $2,933.32. The second vice president received a salary of $7,314.81 in 1912 and $7,752.70 in 1913. The secretary received a salary of $5,828.70 in 1912 and $5,938.17 in 1913, and the assistant secretary received a salary of $3,500 in the year 1912 and $4,200 in 1913. The appraiser in arriving at the good will of the business took the profits of the last three years and deducted therefrom the interest on the average working capital at 6 per cent. per annum from that time and made an allowance of loss for bad debts, and thereby arrived at the figure $42,915.69 as the value of the good will, amounting to $21.46 per share.

That the good will of a business, if such there be, is subject to a tax, I think is settled. Matter of Vivanti, 138 App. Div. 281, 122 N. Y. Supp. 954; Id., 146 App. Div. 942, 131 N. Y. Supp. 1148; affirmed 206 N. Y. 656, 99 N. E. 1119; Matter of Ball, 161 App. Div. 79, 146 N. Y. Supp. 499; Matter of Keahon, 60 Misc. Rep. 508, 113 N. Y. Supp. 926.

The appellant claims, however, that the appraiser erred in arriving at his valuation for good will, because the president and the decedent owned the bulk of the stock, and for that reason did not draw salaries which were proper compensations for their respective services, but permitted the difference between what they did receive as a salary and what they should have received to accumulate. The subordinate officers of the corporation owning but a small amount of stock, she claims, drew about what their services were worth. The testimony is that the value of the services rendered by the president was at least $15,000 a year, and that if he had drawn the same instead of allowing it to accumulate, and the decedent had been paid a salary commensurate with the service rendered by him instead of permitting a like accumulation, the profits would thereby have been materially less, and the good will of the business, calculated upon a basis of profit, would be valued at nothing.

The corporation was a close one. The stock was not listed, and no sales of it had ever occurred prior to the death of the decedent, other than those when the corporation was originally formed. Where such a condition obtains, it is difficult to fix the value of the stock, and it is often possible to get at it only by ascertaining the value of the property which it represents (Matter of Jones, 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476), and even then it can be ascertained only with reasonable certainty (Matter of Rees, 208 N. Y. 590, 102 N. E. 1112, affirming order of surrogate without opinion).

After the death of the decedent, however, and within a few months thereafter, the executrix sold 57 of the 635 shares that had been owned by the decedent to three of the other stockholders of the corporation at $120 per share. The testimony is that this amount was the fair and reasonable market value of the stock at that time, and, if nothing occurred to depreciate the value of the stock between the death of the decedent and the date of the sale, it is fair to assume that, if the sale price was the fair and reasonable value of the stock at the time of sale, it was also the fair and reasonable value at the date of the death of the testator. It is conceded by the appellant, however, that between the date of the death of the testator and of the sale a dividend of 4 per cent. was paid, and it is urged upon her behalf that the value of the said shares should therefore have been assessed for purposes of taxation at $124. This figure was arrived at after the deduction of 10 per cent. from the book value, being a proportionate share of the "surplus reserve" of $20,000 above referred to, and without such deduction the petitioner concedes that the book value of the shares was about $138 per share. The reason given by the petitioner, however, for the apparent profits upon which the appraiser bases his valuation of good will, namely, that the two main stockholders failed to draw salaries commensurate with the services rendered by them and permitted the difference between what they earned and what they received to accumulate and thus appear as profit, when in truth and in fact it was not profit but represented the salaries of the two respective officers, seems reasonable to me, particularly so when viewed in the light of the salaries paid to subordinate officers who, as shown by the testimony, rendered no more valuable services to the corporation than did the two main stockholders and officers thereof. A fair deduction from apparent profits as a salary for services rendered seems to be justified. Matter of Crerand, 154 N. Y. Supp. 938.

Considering the nature of the business, before alluded to, the testimony as to such good will given by the witness and making an allowance for salaries to the president and to the vice president and treasurer, for their services, I reach the conclusion that the goodwill was of no value. If I am right in my conclusions, it follows that the appraiser should not have added the item of $21.46 to each share as representing a proportionate part of such good will. I am of the opinion that a fair valuation of these shares for purposes of taxation should have been fixed at the sum of $138.15 per share, being the book value thereof, without any assessment for good will, and being also about the sale price thereof, plus the allowance made as a part of the "surplus reserve" and plus the dividend declared after the death of the testator.

The report is therefore remitted to the appraiser for correction in accordance with this opinion.

Report remitted to appraiser for correction.