Schulz, S.
This is an appeal by the widow of the decedent, individually and as executrix of his last will and testament, from an order fixing the transfer tax upon his estate. The grounds of appeal are alleged to be:
(a) That the sum of $5,500, assessed by the appraiser and fixed by the order as the value of the decedent’s real property is against the evidence and without evidence to sustain it.
(b) That the valuation of the good-will of a partnership of. which the decedent was a member is arbitrary, against the evidence and without evidence.
There is no evidence in the record as to the value of the real estate, except an affidavit by an appraiser for the appellant who estimated it at $5,200. The valuation of the same by the transfer tax appraiser at $5,500 was, therefore, without any evidence to sustain it. If the comptroller was dissatisfied with the value stated in the affidavit, he should have examined the affiant or submitted an appraisal. Matter of Gale, 83 Misc. Rep. 686, 691. The other question involves an inquiry as to whether or not the copartnership hereinafter referred to had any good-will, and if it did, what proportion belongs to the decedent’s estate and what was its value.
It appears that on the 3d day of July, 1911, an agreement was entered into between the decedent, his wife and one Ricardo Vilalta to continue a copartnership which had theretofore existed between them, to April 1,1916. The business of the firm was the manufacture and sale of patented or proprietary medicines, and among the assets of the copartnership were patents and formulas for compounding the same.
Under the agreement all of the parties thereto assigned and transferred to the new copartnership all of the assets of the former firm including the patented or proprietary medicines and all patents and rights *57 to patents for the same. By a subsequent paragraph it was provided that upon the dissolution of the partnership, whether by limitation of time or for any other cause “ each and every of the aforesaid specifics, and the patented or proprietary medicines and formulas together with all patents relating thereto, shall revert to, and become the sole and absolute property of ’ ’ the partner now deceased or his estate in the event of his decease. It also set forth the respective shares of the profits each partner was to receive, in which respect it was subsequently modified as it might be (Morgan v. Child, Cole & Co., 155 Pac. Repr. 451), so that each partner received one-third of the profits instead of the proportion fixed in the agreement.
The appellant in the schedules filed by her claimed that the value of the good-will was $20,665.54 and the decedent’s interest therein was one-third thereof or $6,888.51. The appraiser determined that the co-partnership agreement expired on April 1, 1916, and that the decedent thereupon became the owner of the good-will. He then took the earnings for about five years from January 1, 1912, to January 17, 1917 (the date of decedent’s death) amounting to $79,425.17, deducted six per cent on capital invested, $8,751.14, and then arrived at the difference of $70,674.03 which he determined to be the value of the good-will upon a five years purchase. He states that he made no allowance for salaries because the record discloses that in the five years mentioned the partners drew $30,-264.33 which considering the capital invested and the business itself he considered sufficient remuneration for their services.
It is not disputed that after April 1, 1916, the business was continued under the same firm name with the surviving partners acting in all respects as they had theretofore acted in and about the conduct of the same. *58 The continuation of such a partnership beyond the term limited in the articles may be proved. Harzburg & Co. v. Southern R. Co., (S. C.) 44 S. E. Repr. 75; Nichols v. White, 41 Hun, 152; affd., 114 N. Y. 639; Bainbridge v. Harris, 123 App. Div. 18. The affidavit as to the continuance of the copartnership filed with the appraiser was not contradicted nor was the affiant examined and such statements of a copartner are competent. Nichols v. White, supra. By such continuance the partnership became one whose duration depended upon the consent of the partners, unless it was ended by the death of one of them. In other words it continued as a partnership at will up to the date of the decedent’s death on January 17, 1917. When that event occurred, all of the patented or proprietary medicines and the formulas together with all patents relating thereto, reverted to and became the sole and absolute property of the decedent’s estate. It was not until that time that such reversion took place and the appraiser erred in his conclusion that the reversion occurred on April 1,1916, the date fixed in the partnership agreement for its termination.
On this appeal it is intimated that this business had no good-will because it was in a sense personal. I find nothing in the record that would justify that contention. As heretofore stated, the business consisted of manufacturing and selling patented or proprietary medicines. The people who bought these medicines bore no such relationship to the firm as patients bear to their physician or clients to their lawyer. There was no personal element present. Matter of Caldwell, 107 Misc. Rep. 316. I doubt if many of them were personally acquainted with the decedent or his co-partners. To the people who bought and took the medicines in question, the copartnership was only the name of a firm of established reputation, and that *59 is one of the reasons why I am convinced that the business had a good-will. Matter of Silkman, 121 App. Div. 202.
Upon the death of the decedent, who became the owner of this good-will? The specifics, the patented or proprietary medicines and the formulas together with all of the patents relating thereto as heretofore stated, reverted to .the estate of the decedent. The contract says nothing about good-will, and it becomes necessary to determine whether the good-will also reverted to the estate of the decedent as a necessary concomitant of those other things referred to which the agreement provided should revert. As not only the medicines, but also the formulas and patents under which they were manufactured reverted to the estate of the testator, it is apparent that the two surviving partners could not continue to manufacture and sell such patented medicines. Hence if we assume that there remained in them a part of the good-will of the firm, we would have the anomalous situation that they had something which they could never realize upon. One of the essential elements of good-will which gives it value, is the right of the owner or successor in in terest to continue an established business under the old firm name. People ex rel. Johnson Co. v. Roberts, 159 N. Y. 70, 83. The fact that the surviving partners could not legally continue to manufacture and sell the medicines dealt in by the copartnership by reason of the reversion of the patents, formulas, etc., leads me to the conclusion that it was the intention of the parties that when such reversion took place, the whole good-will of the business also became the property of the estate. Matter of Ball, 161 App. Div. 79, 81; Matter of Hearn, N. Y. L. J. July 24, 1917; Matter of Schmoll, 108 Misc. Rep. 492.
*60 The share of the good-will which reverted to the estate and whose transfer is taxable is not affected by the fact that during the life of the copartnership, the decedent was entitled to receive only one-third of the net profits of the business. Matter of Ball, supra; Matter of Hearn, supra. Nor does it depend upon the amount of capital contributed or services rendered, both of which no doubt increased the value of the good-will. In the absence of an agreement, of course, these considerations would be important, but where there is an agreement, that must be looked to in order to ascertain the intent of the parties, and when, as here, the patents, etc., which make it possible to continue the business of a copartnership, all revert to the estate of a decedent, it seems to me a necessary and unavoidable conclusion that it was the intent that the good-will of the whole business should take the same course. Such would undoubtedly be the case where trade marks or copyrights reverted. Falk v. American West Indies Trading Co., 180 N. Y. 445; U. S. Comp. Stat. 1918, § 9495; Filkins v. Blackman, 13 Blatchf. 440, 444; Independent Baking Powder Co. v. Boorman, 175 Fed. Repr. 448; Eiseman v. Schiffer, 157 id. 473.
The appraiser followed generally the plan outlined by the authorities of taking a certain number of years purchase in calculating the value of the good-will. On the question as to the number of years purchase of such average profit to be taken, it is very difficult to reconcile the cases, and in the last analysis it would appear that the valuation of the good-will depends upon the circumstances of each case. Matter of Herrmann, 110 Misc. Rep. 475. In my opinion the number of years taken to arrive at the average yearly profit was correct, but I think the years purchase should be three years instead of five.
From the earnings of each of the last five years of *61 the copartnership, there should be deducted interest on capital invested in the concern by all of the co-partners at the rate of 6 per centum per annum (Matter of Seaich, 170 App. Div. 686; affd., 219 N. Y. 634; Estate of Rosenbluth, N. Y. L. J. Jan. 26, 1916), and an allowance for the salaries of the members of the firm who rendered services to it. Matter of Rees, N. Y. L. J. Nov. 21, 1911; affd., 153 App. Div. 900; 208 N. Y. 590; Matter of Roos, 90 Misc. Rep. 521; Matter of Keahon, 60 id. 508; Matter of Crerand, 154 N. Y. Supp. 938. The net profits per year thus arrived at should be added and divided by five to obtain the average yearly net profits, and of the result a three years’ purchase should be taken. There is nothing in the evidence from which I can determine whether or not the amount withdrawn by the several parties during the five years stated is a fair allowance to them by way of salaries for services rendered.
For the reasons stated, the order is reversed and the matter referred back to the appraiser to correct the same with reference to the value of the real estate, tó take proof as to the services rendered by the respective copartners and make allowances therefor, and to ascertain the value of the good-will in the manner indicated.
Order reversed.