## EDWARD H. SALSBURY

*v.*

## ELISHA C. WARE.

*Opinion filed December 18, 1899—Rehearing denied February 17, 1900.*

1. PRINCIPAL AND AGENT—*agent cannot deal with subject matter on his own account.* An agent acting for the purchaser of land, whether by appointment or by volunteering, cannot take advantage of his position to make a profit for himself, but all profits and advantages gained in the transaction belong to the principal.

2. EVIDENCE—*what proof necessary to overcome a sworn answer.* A sworn answer having been called for and given must be accepted as true as to allegations of the bill to which it is clearly responsive, unless overcome by the testimony of two witnesses, or one witness and corroborating facts equal to testimony of another.

3. SAME—*when sworn answer denying fact of agency is overcome.* On accounting against an alleged agent in a land purchase, a sworn answer denying such agency is overcome by the testimony of the complainant that the relation existed, together with evidence that the defendant represented to the vendor that he was acting for the complainant, to whom the deed was made and who advanced the purchase money.

4. SAME—*evidentiary value of fact that alleged agent received no commission.* That an alleged agent in a land purchase received no commission has no important bearing upon the question of the existence of the relation of agency, where he owned a large tract of land which he was interested in draining through that purchased by the principal, who had agreed to have a ditch constructed at a heavy expense to himself.

5. TENDER—*when tender of a re-conveyance in equity is unnecessary.* In an action in equity by a principal to recover money obtained by his agent through misrepresenting the purchase price of land no tender of a re-conveyance is necessary, where the deed was made to the principal by the vendor, who received the price he asked for the property.

6. ACCOUNTING—*what a proper item of credit on accounting against agent for misappropriated funds.* On accounting against an agent by the principal to recover the excess over the actual price of land purchased, which the agent had appropriated, an amount paid by the latter to the third party for information that the land was for sale is properly allowed as a credit, where such party was ignorant of the deception practiced by the agent on his principal.

*Ware v. Salsbury*, 80 Ill. App. 485, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

The original bill in this case was filed on April 27, 1895, by the appellant against the appellee, alleging that appellee had acted as the agent of appellant in the purchase of certain lands in Indiana, and praying that appellee should be required to account for certain moneys paid to him by appellant to be applied toward such purchase, but which are alleged to have been appropriated by the appellee to his own use. Several amendments were made to the bill, and the bill as finally amended was sworn to. The appellee answered the bill, and replication was filed to the answer. Upon the hearing of the cause, the court rendered a decree substantially in accordance with the prayer of the bill. An appeal was taken from this decree to the Appellate Court, which reversed the decree and remanded the cause with instructions to dismiss the bill for want of equity. The present appeal is prosecuted from the judgment so entered by the Appellate Court.

The bill charges, that Salsbury employed Ware, a real estate agent in Chicago, in September, 1890, to purchase for him, as his agent, certain lands in Jasper county, Indiana; that Ware did, in pursuance of such agency, purchase one tract of land of 720 acres from one Ingraham at the price, as Salsbury then supposed and was informed by Ware, of $12.00 per acre or $8640.00, and another tract of 480 acres from one Wood at the price, as Salsbury then supposed and was informed by Ware, of $8.00 per acre or $3840.00; that Salsbury paid to Ware, said prices respectively for said tracts upon the representation by Ware that the lands cost said amounts per acre, and received from him conveyances therefor from Ingraham and Wood under the belief that Ware in fact

paid to Ingraham and Wood the amounts so paid by Salsbury; that, a short time prior to the filing of the bill, Salsbury for the first time ascertained, that he had been deceived by Ware in regard to the price paid by the latter for said lands; that Ware in fact paid to Ingraham only $5040.00, instead of $8640.00 as represented by Ware, and to one Thompson, but not to Wood as Salsbury supposed, only $1600.00, instead of $3840.00 as represented by Ware; that Wood took the title from Thompson, and conveyed it to Salsbury as an accommodation to Ware, and to prevent Salsbury from knowing what was in fact paid by Ware for the lands.

The original bill asked for a discovery and an accounting, but waived the answer under oath.

A demurrer was filed and sustained, and the appellee amended his bill in certain respects by striking out the waiver of the answer under oath, and prayed that the bill be answered under oath.

A demurrer was again interposed, and the bill again amended. A third demurrer was filed and the bill was amended for the third time, and, as so amended, called for answer under oath.

Appellee, Ware, answered under oath, denying that he ever at any time acted as the agent of the appellant, Salsbury, in the purchase of said lands, or made any of the fraudulent representations set up in the bill. The answer admits, that appellee purchased the property for the prices alleged in the bill from Ingraham and Thompson, but denies that such purchases were made for appellant; and alleges that the appellee made such purchases on his own account, and that he sold the lands to appellant at the figures named in the bill; and further alleges that, before the purchase of the lands, appellant examined the same, and made the purchases after full investigation; that the lands were well worth the price paid by appellant; that appellant re-sold the lands at a large profit; that appellant never paid, or offered to pay ap-

pellee for his services as agent, and that appellee never presented any bill to appellant for such services.

After replication was filed to the answer, the cause was referred to a master who took evidence, and made a report to the court, substantially sustaining the claims of the appellant, as set up in his bill.

Exceptions were filed to the report of the master, but said exceptions were overruled, except as to the disallowance in the report of an amount claimed to have been paid by appellee to one Siegler. In the latter respect the exceptions to the report were sustained; in all other respects, the report was confirmed, and a decree was entered by the court, ordering that Ware should pay to Salsbury $4016.25 with interest to the date of the decree, and that execution should issue therefor.

With the exception already noted, the decree of the court sustained the master's findings and conclusions.

HARRY L. IRWIN, for appellant.

WALTER M. HOWLAND, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

One controlling fact stands out prominently in this record. That fact is, that appellant furnished to appellee $8640.00 to be applied toward the purchase of 720 acres of land in Indiana from one Ingraham; and that appellant furnished to appellee $3840.00 to be applied to the purchase of 480 acres of land in Indiana from one Wood; and that appellee applied only $5040.00 of the $8640.00 towards the purchase of the 720 acres, and appropriated the difference, to-wit, $3600.00 to himself; and that appellee applied only $1600.00 of the $3840.00 towards the purchase of the 480 acres, and appropriated the difference, to-wit, $2240.00 to himself. The question in the case is, whether the appellee should be required to account to

the appellant for the two sums of money so retained by him, amounting to $5840.00.

The solution of this question depends upon the nature of the relation, which existed between appellant and appellee in the making of the purchases in question.

The contention of the appellant is, that the appellee undertook to buy the land for him as his agent, and deceived him by making him believe that he paid $12,480.00 for the lands, when, as matter of fact, he paid only $6640.00 therefor. The contention of appellee is, that he obtained option prices upon the lands from the owners thereof, and sold the lands, as owner, to appellant, and that he in no way acted as the agent of appellant.

In September, 1890, the appellee, Ware, was a real estate agent doing business, and having an office, in Chicago. At that time he owned 2600 acres of land in Jasper county, Indiana, and, with other parties, was interested in ditching and draining the surrounding district for the purpose of improving his own and other lands in the vicinity. At that time, also, he was dealing in lands other than his own in Jasper county, Indiana. The owners of these other tracts subsequently gave to him the prices, for which they would sell the same. Appellant and appellee had been acquainted for a year or more prior to September, 1890, lived near each other in Chicago, and occasionally conversed respecting these lands in Indiana. In July or August, 1890, Ware told Salsbury that, if he would buy some lands in Jasper county, he could sell the same soon and realize a handsome profit. Ware told Salsbury that he himself owned lands there, and that he could obtain for Salsbury a tract of some 1100 acres for $10 an acre. They went to Indiana and looked at some of the lands in company with one Siegler, who then lived upon the 2600 acres owned by Ware, and acted as the manager thereof for Ware at a salary, as Ware says, of $50.00 per month. Ware told Salsbury, that there was a tract of 720 acres owned by a man named Ingraham,

who asked $12.50 an acre for the same. Ware, however, said that he would see if he could "do better on the price" than $12.50. Salsbury, Ware, and Siegler went to look at the Ingraham tract of 720 acres, and at a three-quarter section, or 480 acres, then owned by one Thompson. Salsbury agreed to take the two pieces, the Ingraham tract of 720 acres at $12.00 per acre, and the Thompson or Wood tract at $8.00 per acre. The negotiations and transactions, so far as Salsbury was concerned, were had with Ware alone, and on September 13, 1890, Salsbury made a deposit of $250.00 with Ware, and the terms of sale were agreed upon.

Thereafter, by warranty deed, dated October 6, 1890, and acknowledged October 25, 1890, Ingraham and wife conveyed the 720 acres to Salsbury. Part of the consideration was paid in cash, and the balance was secured by a purchase money trust deed and note, which have since been paid. The deed was delivered by Salsbury to Ware, and the payments were made to Ware. By deed, dated October 7, 1890, and acknowledged the same day, one William M. Wood conveyed to Salsbury the tract of 480 acres for $3840.00, part of which was paid in cash and the balance of it was secured by trust deeds and notes, which have since been paid. On the same day, on which Wood conveyed the 480 acres to Salsbury, to-wit, October 7, 1890, one Alfred Thompson, the real owner of the 480 acres, conveyed the same by warranty deed to Wood for $1600.00. Wood was a mere figure-head acting for Ware, who paid him $20.00 for his services in taking the title and executing the notes for a part of the purchase money. All the negotiations concerning the 480 acres were carried on between Salsbury and Ware. Salsbury did not come in contact with Ingraham, or Thompson, or Wood, in connection with the purchases.

It cannot be said that, in making these purchases, Ware acted as agent for Ingraham and Thompson, the owners of the property. The theory, that he was acting

as agent for the vendors, is negatived by his contention, that he was himself the owner of the property, and was selling it as his own property to the appellant. If he owned the property himself, or had been given options for the purchase of it by the owners, he certainly was not acting as the agent of such owners in making the sales.

He never told Salsbury, the appellant, nor did the appellant ever know until shortly before the present bill was filed, that the appellee, Ware, claimed to own the property, or to be selling it as his own property, or that he had, or claimed to have, any interest of any kind in it.

The evidence shows, that Salsbury dealt with Ware as his agent, or in such a way that a trust relationship existed between them. Ware had no right to take advantage of that relationship to make a profit for himself, which properly belonged to Salsbury. The position, which he occupied towards Salsbury, was one of trust and confidence, and, inasmuch as trust and confidence were placed in him by Salsbury, he could not take advantage thereof to the injury of Salsbury.

The law upon this subject is well settled. In equity, an agent is disabled from dealing in the matter of his agency on his own account. The agency being established, the agent will be compelled to transfer the benefit of his contract to his principal, even though he may swear that he purchased on his own account. It makes no difference that such agent is a mere volunteer; if he professes to act not for himself but for another, he has trust and confidence placed in him. The rule applies as well to an agent, who becomes such by volunteering, as to one who is made such by appointment. If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition. The party relied upon must see, that he meets fairly and squarely the responsibility of his position, and does not take any advantage, either for his own gain, or to the injury of the person whom he represents. If a party employs an agent to make

a purchase of land, he is entitled to all the skill, ability and industry of such agent to make the purchase on the best terms that can be had, and is entitled to the property at the price the agent pays. The agent cannot avail himself of any advantage his position may give him to speculate to the injury of his principal; all the profits and advantages gained in the transaction belong to the principal. (*Casey* v. *Casey*, 14 Ill. 112; *Dennis* v. *McCagg*, 32 id. 429; *Cottom* v. *Holliday*, 59 id. 176; *Conant* v. *Riseborough*, 139 id. 383; *Helberg* v. *Nichol*, 149 id. 249).

It is said, however, by the appellee, that the evidence in the case does not establish the relation of principal and agent between appellant and appellee. The ground, upon which this contention is based, is that the answer under oath was not waived by the bill, and that the answer, which was called for under oath, and which was made under oath, was not overcome by the required amount of testimony. It has been said by this court in a number of cases that, so far as an answer, which is required to be under oath, is responsive to the bill, and fairly meets and responds to the allegations of the complainant, it must be received as true, unless it is disproved by evidence amounting to, or equivalent to, the evidence of two witnesses. (*Stouffer* v. *Machen*, 16 Ill. 553). The rule, however, is in many cases otherwise expressed by the statement that, where the answer is called for under oath, and is under oath, and is clearly responsive to the bill, it must prevail, unless the complainant sustains the allegations of his bill by two witnesses, or by one witness and strong corroborating circumstances. Instead of the requirement, that there be two witnesses to overcome the sworn answer, it is sufficient if it be opposed by one witness and strong corroborating circumstances. (*Swift* v. *Trustees of Schools*, 14 Ill. 493; *Morrison* v. *Stewart*, 24 id. 24; *Myers* v. *Kinzie*, 26 id. 36; *Fish* v. *Stubbings*, 65 id. 492). This court has said in a number of cases that such sworn answer may be overcome by the evidence

of two witnesses, or by the evidence of one witness and circumstances equal to the testimony of another. (*Wightman* v. *Hart*, 37 Ill. 123; *Willdey* v. *Webster*, 42 id. 108; *Blow* v. *Gage*, 44 id. 208; *Stevenson* v. *Mathers*, 67 id. 123).

A careful perusal of the evidence satisfies us, that the sworn answer in this case is overcome, if not by the testimony of two witnesses, certainly by the testimony of one witness and corroborating circumstances, or circumstances equivalent to the testimony of another witness. The complainant in the bill, the appellant here, swears that the appellee, Ware, acted as his agent in this matter. Ware in his sworn answer denies the fact of agency. Undoubtedly, the testimony of appellant is not sufficient to overcome the effect of the sworn answer. But the appellant's evidence is sustained by that of Ingraham. Ingraham denies, that he made the sale of the property to appellee, Ware. On the contrary, he says that Ware told him, that he was buying the property for a friend of his. Ingraham did not know, who that friend was, until he was called upon to execute the deed of the 720 acres, and he states that he then for the first time knew that the friend's name was Salsbury, Salsbury being the grantee in the deed. This testimony of Ingraham not only negatives the idea, that Ware was purchasing the property for himself, but establishes the conclusion, that he was buying it as the agent for the party, whose name he requested to have inserted in the deed as grantee.

In addition to the testimony of Ingraham, there are many circumstances, which corroborate the evidence of appellant that appellee was acting as his agent. Appellee sedulously concealed from Salsbury the fact, if it was a fact, that he had any interest whatever in the property himself. When he first broached the subject of buying lands in Indiana, he stated that he owned 2600 acres there himself, and that other lands could be obtained there at less figures than he had been offered for his own lands. It is manifest that he thereby intended to convey

183—33

to appellant the idea, that the latter was to purchase the property in question not from appellee, but from other parties. He never proposed to sell to appellant any of his own 2600 acres. If he had informed appellant that he was making a profit on the purchase, appellant would have made inquiry from the owners of the property as to the prices, but, confiding in the good faith of appellee, he relied only upon what appellee stated to him about the lands. When Ingraham executed the deed conveying the 720 acres to Salsbury, he received in cash and securities only $5040.00, but the consideration named in the deed was $8640.00, $3600.00 more than Ingraham received. Ware requested Ingraham to name the sum of $8640.00 as the consideration in the deed, stating that it might assist in getting a better price for the land when sold again. Ingraham says: "Ware wanted to know if I was willing to sign the deed for $12.00 consideration per acre; I told him I would after I consulted my attorney; I received $7.00 an acre, all the money, less $1500.00 I was owing on the land, which Salsbury assumed; Ware wanted it made out $12.00 per acre as he was buying it for a friend; don't remember that he mentioned the name; his reason was that it would help in handling it to other parties; make the price a little better; when I made the deed, I saw that it was to Salsbury." Ware's statement to Ingraham contained a falsehood, inasmuch as it induced Ingraham to believe that he was selling his property at the figure, which he actually received, to-wit, $7.00 per acre, or $5040.00, and that the greater sum mentioned in the deed did not represent any actual consideration so far as it exceeded $5040.00. If Ingraham had known that Salsbury was paying $3600.00 more than he, Ingraham, received, he would have investigated more particularly the nature of the sale, which Ware was inducing him to make. The further object of naming $8640.00, as the consideration in the deed, was to deceive Salsbury, the purchaser, by making him believe that Ingraham, the seller,

was receiving the whole of the purchase money.  If Salsbury had known that Ware was receiving $3600.00 of the consideration named in the deed, he would have inquired more particularly into the nature of the property, which he was buying.  There is no reason why Ware should not have frankly told Salsbury that he was making a profit upon the purchase, if he had not sustained such a relation of confidence to Salsbury, as would have aroused the latter's suspicions, in case he had been aware of the real facts.  The method, which he adopted for the purpose of concealing from Salsbury the fact that he was making a profit, confirms the statement of Salsbury, that Ware was acting in Salsbury's behalf, and as his agent.

The method, pursued by Ware for concealing from Salsbury that he made a profit of $2240.00 upon the purchase from Thompson of the 480 acres, was different from that adopted in the case of the Ingraham purchase. Ware obtained the 480 acres from Thompson, the real owner, for $1600.00.  Thompson was made to believe that one Wood was purchasing the property from him, and Thompson made a deed to Wood for the expressed consideration of $1600.00.  Thereupon, Wood deeded the property on the same day to Salsbury for the expressed consideration of $3840.00.  Salsbury was made to believe that he was purchasing the property from Wood.  Wood, however, was a mere stool-pigeon, and held the title for Ware.  Wood had no interest in the property whatever, and received only $20.00 for his services in holding the title, and in executing the purchase money notes and trust deed.  Wood seems to have disappeared, and it was impossible to obtain his testimony in this case.  Wood's name was evidently made use of for the purpose of concealing from Salsbury the fact that Ware was making a profit, and such concealment would not have been resorted to, if there had been no relation of trust and confidence between Ware and Salsbury.

Moreover, the statements and receipts and other documents introduced in evidence, which are in the handwriting of appellee, Ware, and which were submitted by him to Salsbury, speak of Ingraham and Wood as the owners of the property, and make no reference to appellee, as the owner thereof. The effect of these documents was to induce the belief in the appellant, that he was purchasing the property, not from appellee, but from Ingraham and Wood. They are not at all consistent with the contention, that Ware was selling the property as his own.

Much is said in the testimony of appellee to the effect that he obtained options of purchase from Ingraham and Thompson. There is no proof, that they gave him any such options beyond merely stating that they would sell their property at certain figures. If, however, such options were given, they were not in writing, but were merely verbal, and did not bind the owners of the property, nor clothe appellee with any interest therein, which he could enforce. As we read the testimony, however, such verbal options, as may have been given to appellee, were given only after he had received assurances from appellant, that the latter would buy the property. The evidence also shows that whatever moneys appellee paid to the owners of the property for the purchase thereof were moneys contributed by appellant, and did not consist of appellee's money.

We are of the opinion, that the sworn answer of appellee is overcome by the testimony of appellant, and the testimony of Ingraham, and the admissions of the appellee himself, and the written documents introduced in proof—all together amounting to the testimony of one witness and corroborating circumstances in accordance with the rule above stated.

There is no force in the contention that appellant has been guilty of *laches*. It is true that in February, 1892, appellant learned, that the consideration in the deed from Thompson to Wood was less than the consideration

named in the deed from Wood to appellant. But when appellant spoke about this matter to Siegler, appellee's manager, Siegler told him that some other party held a contract which had to be taken up by appellee, and appellant was thereby induced to believe, that appellee had used all the money given him by appellant in the purchase of the 480 acres. Appellant's suspicions were thereby lulled to sleep. Appellant did not learn until the summer of 1894, that Ingraham had received only $7.00 per acre for his land. As soon as he learned of this, he put the matter in a lawyer's hands, and appellee was notified of this step in February or March, 1895. This suit was commenced on April 27, 1895.

It was not necessary, as is claimed by appellee, that appellant should have tendered back re-conveyances of the lands in question, as soon as he discovered that appellee had made the profit, for which he is here called to account. Such tender might have been necessary, if the sale here had been made of his own property by an agent to his principal as being the property of another without disclosing the fact of his interest; in such case, there would be such a fraud in law, as would give the principal the right to avoid the sale. In the case at bar, however, appellant bought the property from Ingraham and Wood. Ware had at no time owned the property, or claimed to appellant that he owned it. It follows, that appellant had no right to repudiate the sale. Ingraham and Thompson received for the property the amounts, for which they agreed to sell it, and made no representations to appellant, which were false. The fraud here was on the part of the agent, Ware. It would be unjust to avoid the sales on account of Ware's fraud, when the real vendors of the property were faultless. (*Ely* v. *Hanford*, 65 Ill. 267).

It seems that some arrangement existed between Ware and his manager, Siegler, by which the latter was to find for Ware property which was for sale, and to get the price thereon, and, in consideration thereof, was to have

half of the profits made by Ware. The proof in this case shows, that Ware paid a certain amount of the profit, which he received in the purchases from Ingraham and Thompson to Siegler under the agreement aforesaid. The chancellor of the circuit court, in his decree, required the amount so paid by Ware to Siegler to be deducted from the amount, which was to be charged against Ware in the accounting. The appellant, Salsbury, assigns a cross-error as to this portion of the decree, crediting appellee with the amount so paid to Siegler. We are not disposed, however, to interfere with the decree, so far as this item is concerned. It does not appear that Siegler was a party to, or had any knowledge of, the deception practiced by appellee upon appellant. The amount paid Siegler is to be regarded as having been actually paid towards the purchase of the property.

It is true that Ware charged Salsbury no commissions for making the purchase, and Salsbury offered to pay no commissions. But we do not regard this as having any particular bearing upon the case. Ware was satisfied with his profit, and Salsbury was content if no commissions were asked for. As has already been stated, appellee at that time owned 2600 acres of land in the vicinity of the lands purchased for Salsbury. Appellee was interested in having a ditch constructed through his lands and through the lands of appellant, the expense of which the former owners were either unable or unwilling to pay. Appellant was to consent to have the ditch in question constructed, and his assessment therefor would amount to some $2000.00. It may well be assumed, that appellee regarded the construction of this ditch, which, by the drainage thereby to be secured, would benefit his 2600 acres, as a sufficient compensation for his services in the purchase of the land. This undoubtedly was also the view taken by the appellant.

The fact, that appellant afterwards sold the tracts purchased by him at a larger price than he paid therefor,

and thereby made a profit, has no bearing, so far as we can see, upon the controversy between appellant and appellee.

The judgment of the Appellate Court is reversed, and the decree of the circuit court is affirmed.

*Judgment reversed.*