## ERLE WIGHTMAN *vs.* HENRY M. WIGHTMAN.

Bristol.	October 25, 1915. — March 8, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Agency,* Termination. *Equity Jurisdiction,* For an accounting. *Dentist. Good Will.*

In a suit in equity for an accounting, it appeared that the plaintiff was a dentist and that the defendant, who was his younger brother, also was a dentist, that the plaintiff employed the defendant as his assistant at a salary of $30 a week, that the plaintiff became insane and wholly incapable of practicing his profession, that the defendant for a time, apparently believing that the plaintiff's incapacity was only temporary, continued to practice dentistry at the same office sending out bills in the plaintiff's name and charging the plaintiff in a cash book $30 a week for his, the defendant's, services, that after a few months the defendant,

learning that the plaintiff was not improving, began and continued to practice dentistry on his own account at the same office but wholly in his own name, that about two years and a half after the plaintiff had become insane he wholly recovered, and brought the suit in equity for an accounting. It was *held:*

1. That the insanity of the plaintiff terminated the relation of master and servant between the plaintiff and the defendant.

2. That, as the defendant, although not bound to do so, had carried on the business on the plaintiff's account for a certain length of time, he had for this period put himself in the position of one who voluntarily takes upon himself the duties of an agent and so becomes responsible to his principal as such agent, and therefore that the defendant must account to the plaintiff for his profits during this period.

3. But that the defendant was not bound to continue this relation indefinitely and had a right to carry on the practice of dentistry on his own account, paying the plaintiff for any of the plaintiff's machinery, tools and furniture of which he made use, and accordingly that the period for which the defendant was bound to account to the plaintiff for his profits ended when the defendant ceased to carry on the work of the office for the benefit and on account of the plaintiff.

*It seems,* that the practice of dentistry, which depends for its success on personal qualities and professional skill, has no good will that arises merely from the place where it is carried on.

CARROLL, J. The plaintiff and the defendant are brothers. From 1898 till April, 1907, the plaintiff (a dentist) practiced his profession in an office in Pawtucket, Rhode Island. The defendant, a younger brother, also a dentist, began working for him in 1898. His wages, beginning at $10 a week, were increased from time to time, until April, 1907, when he received $30 a week. Before this last increase "he had expressed an intention of leaving his brother and starting business on his own account. . . . But he still expressed his desire to quit and had given his brother notice that he should leave in thirty days." The exact time when this notice of the defendant was given does not clearly appear. We infer from the report of the master, that it was given either in March, 1907, when the defendant's wages were increased, or a short time before June 1, 1907.

In April, 1907, the plaintiff broke down. As the master reports, "He was evidently mentally unbalanced and utterly incapacitated to do any business that required intelligent thought." He continued in this condition for some time. "During the month of May, 1907, the plaintiff occasionally visited his office, but after that and until after the first of January, 1910, he gave no attention at all to the business, and during all that time was mentally incapable of giving any attention to it." In 1908 he was taken to

a sanitarium and later to an insane hospital. In January, 1910, he recovered, and since then his condition has been normal.

May 28, 1907, the plaintiff went before a justice of the peace and executed a deed "purporting to convey to his brother, the defendant, all his real estate and personal effects." After a few days he delivered the deed to the brother, and at this time gave him written orders to collect his money, deposited in different banks. There was no valuable consideration for this deed.

The defendant continued to practice his profession at the same office, using the materials, tools and furniture therein. "For a few months he sent out bills on the billheads then in the office in the name of the plaintiff; . . . for a few months, also, he entered upon the cash book weekly payments to himself of $30." In January, 1910, the plaintiff being then in normal condition, demanded of the defendant a return of the property which had been entrusted to him, and an account of the work done by him in the office. The defendant delivered to him the bank books and on July 20 vacated the room in which the plaintiff previously had carried on his practice as a dentist, and in which the defendant practiced from June 1, 1907, until that date, July 20, 1910. Thereupon this bill in equity was brought.

The two brothers lived with their mother at Attleborough, the plaintiff paying the necessary family expenses as head of the family. Beginning in June, 1907, and during the plaintiff's disability, the defendant paid the expenses of the home out of his own funds, amounting to $4,789.03.

The defendant, from money turned over to him by the plaintiff, paid for the latter's expenses while he was mentally unbalanced. The master found "that from and after June 1, 1907, there was no valid contract for services or otherwise existing between the parties." The plaintiff, on account of his condition, was obliged to give up his business, and "he made no contract with his brother as to the future conduct of the business. . . . He simply gave up and went out and his brother stayed and went on with the business." The master then states the account showing a balance due the defendant of $105.77. The master also made the alternative finding, "If, on the other hand, it must be found, upon the foregoing facts, that the defendant was still in the service of the plaintiff, then the account between them must be stated differ-

ently and as follows:" Then follows the account, showing a balance of $1,996.74 due the plaintiff from the defendant.

The bill alleges that the deed of May 28, 1907, was obtained from the plaintiff "by fraud and deception practiced upon the complainant, and by undue influence exerted upon the complainant by said respondent." The master made no finding on this question. His report, however, negatives any fraud on the part of the defendant, and as this question was not argued, we take it to have been waived.

The bill, however, states that the plaintiff "gave into the charge of the respondent the office and furnishings and the tools of his profession, his customers and business, for the respondent to take care of until the complainant's return to health and to the duties of his profession." The Superior Court, upon the master's report, ordered the defendant to reconvey to the plaintiff the real estate described in the deed of May 28, and to pay the plaintiff the costs of suit, taxed at $70, and directed that the plaintiff pay to the defendant $105.77. The case is before us on the plaintiff's appeal from this decree.*

The findings of the master show that in June, 1907, the plaintiff was insane. The contract of employment, therefore, between the parties, ended at this time by reason of the insanity of the employer. Where a relation similar to that of principal and agent exists, on the insanity of the principal the relation ceases. See *Drew* v. *Nunn*, 4 Q. B. D. 661. Story on Agency, § 481.

The plaintiff argues that the defendant, being in the employ of the plaintiff, upon the latter's insanity, or from June 1, 1907, until January, 1910, continued to be the agent of the plaintiff and is chargeable with the profits of the business during that time.

The defendant was employed to assist his brother in his practice as a dentist on a weekly salary of $30. While he was in the employ of his brother, he was, strictly speaking, his servant or employee. He did not stand toward him in a fiduciary relation in the real sense of the expression. He was not an agent held to the utmost good faith. See *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, at page 375.

Leaving out of consideration the question of responsibility of the

* Made by *Sanderson*, J.

defendant to the plaintiff during the few months following June 1, 1907, when he charged himself with a weekly salary of $30 and sent out bills in his brother's name; when the contract between them was ended by the insanity of the plaintiff, the defendant had the right to practice his profession on his own account. No obligation to continue the brother's business for the brother's profit rested upon the defendant because he was his brother, or because he had been in his employ. While he used the machinery, tools and furniture of the plaintiff and must pay for them, or their use, and the master has so found in his account, that fact is not enough to make the defendant, a dentist practicing his profession in his own name, responsible to the owner of the material for the profits of the business; nor does the fact that the defendant occupied the room formerly occupied by his brother make him his agent and make the business conducted by him, under his own personal supervision and management, the business of his former employer. He was contributing his own personal efforts and ability in the work of his profession and a servant or employee who has assisted another in the practice of a profession is not guilty of a breach of trust merely because he continues to practice on his own account and in his own name at the office occupied by his employer before his insanity. Even if the question were open on the pleadings, there is nothing to show that the defendant was responsible for the good will of the plaintiff. There is no finding of the master that the defendant practiced in the plaintiff's name or held himself out as his successor. As stated by Braley, J., in *Foss* v. *Roby,* 195 Mass. 292, at page 297, in "the practice of dentistry, the personal qualities of integrity, professional skill and ability attach to and follow the person not the place." See *Moore* v. *Rawson,* 199 Mass. 493; *Hutchinson* v. *Nay,* 187 Mass. 262.

We think in one respect there was an error. The master made no finding showing the amount of the business during the period of a few months following June 1, 1907. Nor is there any finding of the master to show when the defendant ceased to manage the office and its business for the benefit of his brother, or when he. began to practice his profession on his own account. While the master does find that there was no contract between the brothers after June 1, 1907, and that the defendant was not in the service of the plaintiff after that time, and although the plaintiff may have

contemplated or intended, so far as he could, that the defendant was to carry on the business for him, the defendant did not agree to this and in no way bound himself to any such arrangement, except in so far as shown by his conduct in acting for the plaintiff during this period of a few months.

Notwithstanding the findings of the master, the acts and conduct of the defendant show that during this period when he sent out the bills in the name of his brother and charged himself with a weekly salary of $30, he then was carrying on the work of the office for the plaintiff, and must account to him for the profits during that time. It may be the defendant thought his brother's incapacity would be temporary. But whatever his motive, he was during that period conducting the work of the office in the interest of and in behalf of the plaintiff.

The findings of the master show there was no fraud or wrong intention on the part of the defendant in acting as he did during the entire period of the plaintiff's absence. In the early part of it, the defendant was seeking to help his brother, expecting the mental trouble would be of short duration. He was not bound to do as he did. He was not compelled to carry on the business on his brother's account for any length of time; but having done so, during this indefinite period, his position is analogous to that of one who voluntarily takes upon himself the duties of an agent, and so becomes responsible to the principal as such. *Dennis* v. *McCagg,* 32 Ill. 429. *Salsbury* v. *Ware,* 183 Ill. 505. See 39 Cyc. 190.

When the defendant learned that the plaintiff was not improving and it was uncertain how long he would be incapacitated, he then had the legal right to practice his profession on his own account, solely for his own profit. He could do this, we think, without breaking faith with his former employer, or being in any way responsible to him for the income and profits.

There must be further hearing to determine the time when the defendant began to practice his profession on his own account, the returns of the office from June 1, 1907, to that time, and to state the account between the parties during this period beginning June 1, 1907, and ending when the defendant ceased to carry on the work of the office for the benefit of the plaintiff.

*So ordered.*

*S. P. Hall,* (*F. S. Hall* with him,) for the plaintiff.
*C. R. Cummings,* for the defendant.