## Baer's Estate

*Francis K. Swartley*, and *Weill, Nesbit & Lisenby*, for accountants.

*Francis K. Swartley*, for guardian for minors.

HOLLAND, P. J., May 13, 1940.—The account of Provi-dent Trust Company of Philadelphia and Beatrice S. Baer, executors, was examined and audited by the court

on April 5, 1940 . . . Benjamin F. Baer, Jr., also known as B. F. Baer, Jr., died on December 19, 1938, leaving a will dated January 22, 1936, probated on December 23, 1938, on which the present letters were granted to the accountants who were appointed executors.

The question was submitted for adjudication as to whether certain moneys or any part thereof, received by Beatrice S. Baer, individually, who is one of the executors, under the circumstances as hereinafter set forth, belong to the estate.

Decedent was a prominent ophthalmologist practicing his profession in Philadelphia. His offices were located in a property owned by his wife, the said Beatrice S. Baer. At the time of his death and for seven years prior thereto he had employed an assistant, Dr. J. Thomas Krall, and, during his life, decedent had expressed both to Dr. Krall and to the said Beatrice S. Baer a wish that, in case he died, Dr. Krall should succeed to his practice.

Shortly after the death of decedent, the present counsel for the executors and for the said Beatrice S. Baer, individually, conferred with Dr. Krall and his counsel with reference to decedent's practice. As a result of these conferences an agreement was entered into by the executors and Dr. Krall and a lease was made by the said Beatrice S. Baer to Dr. Krall, copies of which documents were offered in evidence at the audit, marked respectively exhibits 1 and 2.

The principal features of the agreement were the following: Dr. Krall agreed to buy decedent's, Dr. Baer's, instruments, equipment, and medical books at a price to be determined by an appraisement. He further agreed, without cost to the estate, to keep Dr. Baer's books covering patients' accounts, to send bills and statements and to remit collections of these accounts to Dr. Baer's estate. The executors agreed to continue Dr. Krall's salary to December 31, 1938, and to bear the expenses of the office to that date. The fees for services rendered by Dr. Krall

to former patients of Dr. Baer during this period were to belong to the estate. The executors further agreed that thenceforth Dr. Krall should have the possession and use of Dr. Baer's card index and any and all other records containing patients' histories, with the understanding, however, that, in case a former patient of Dr. Baer should consult an ophthalmologist other than Dr. Krall, the patient's records would be made available to such other ophthalmologist.

Under the terms of the lease Dr. Krall agreed to pay Mrs. Baer a rental of $125 per month for the same quarters Dr. Baer had occupied, which is to be considered a normal rental for the space in question, and "as further consideration for this lease" to pay the following percentages of gross fees collected by him for services rendered to former patients of Dr. Baer: For the year 1939, 50 percent; for the year 1940, 33⅓ percent; for the year 1941, 25 percent. Up to the end of February 1940, Dr. Krall had paid over to Mrs. Baer, as her share of fees paid by former patients of Dr. Baer, pursuant to the above agreement, the sum of $7,739.15.

At the time the agreement and the lease were entered into, it was agreed between Provident Trust Company and Mrs. Baer, executors, and Mrs. Baer, individually, that they were made without prejudice to any rights which the estate might have to participate in any of the moneys paid by Dr. Krall, representing fees paid by former patients of Dr. Baer under the above-referred-to provisions of the lease.

The payments in question have not been accounted for by the executors nor are said payments claimed by the executors to belong to the estate. The executors submit themselves to the decision of the court, but state their position to be that they believe the widow is entitled to retain the sums paid to her or to be paid. They submit that the essence of the question is whether there is any legally recognizable property right in the nature of good-

will attaching to the practice of a professional man which exists after his death.

The question has never been decided in this State, although in McFarland v. Stewart, 2 Watts 111 (1833), Chief Justice Gibson indicated by way of dictum that, in the case of a lawyer or physician, the goodwill attendant upon said practice was extinguished by the death of the lawyer or physician. A most comprehensive discussion of the question is to be found in Caldwell's Estate, 107 Misc. 316, 176 N. Y. Supp. 425 (1919). In that case, decedent, a physician who specialized in X-ray work, by his will bequeathed the goodwill of his business together with the apparatus used in connection therewith to his two assistants. The New York transfer tax appraisers ascribed a certain value to the goodwill and proposed to include that value in the decedent's estate for transfer tax purposes. The executors, however, contended that the business had no goodwill which survived decedent and appealed from the transfer tax appraisement. The court sustained the executors' contention. To the same effect are Ryman v. Kennedy, 141 Ga. 75, 80 S. E. 551 (1913), and Wightman v. Wightman, 223 Mass. 398 (1916). In Caldwell's Estate, supra, the court concluded that as the profitable business conducted by the deceased physician was the result of his superior knowledge and skill, and as the business was not conducted under his name after his death, there was no goodwill of the business which was subject to any transfer tax. Such a conclusion is inescapable in the present case. We decide that the payments in question were not made by Dr. Krall for the purchase of any asset of which decedent died possessed or to which his estate after his death could possibly have become entitled. It follows that the executors are under no duty to collect any sums payable under the lease between decedent's widow and Dr. Krall.

And now, May 13, 1940, this adjudication is confirmed nisi.